UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JOHN REMORENKO, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br>vs.<br><br>PANERA BREAD CO., RONALD M. SHAICH, WILLIAM W. MORETON, DOMENIC COLASACCO, DIANE HESSAN, FRED FOULKES, LARRY FRANKLIN, THOMAS E. LYNCH, and MARK STOEVER, JAMES WHITE<br><br>Defendants. | Case No.:<br><br><br><br><br><br><br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff John Remorenko ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934. In support of this class action complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1. Plaintiff brings this action, on behalf of himself and the public stockholders of Panera Bread Company ("Panera" or the "Company"), against the Company and its Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below), for violations of Sections 20(a) and 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9"). Specifically, Defendants solicit the tendering of stockholder shares in connection with the sale of the Company to an affiliate of

1

JAB Holdings B.V., Rye Parent Corp. ("Parent"), by way of Parent's wholly owned subsidiary Rye Merger Sub, Inc. ("Merger Sub" and together with Parent, "JAB"), through a Proxy Statement that omits material facts necessary to make the statements therein not false or misleading.[1] Stockholders require this material information to decide whether to vote in favor of the proposed transaction.

2. On April 5, 2017, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement"), by which JAB will acquire all of the outstanding shares of Panera in an all-cash transaction (the "Proposed Transaction"). If consummated, Panera stockholders will receive $ $315.00 cash for each share of Panera stock that they own ("Merger Consideration"). The Proposed Transaction is valued at approximately $7.5 billion.

3. On May 12, 2017, Defendants issued a materially incomplete and misleading disclosures in the Schedule 14A Information Statement (the "Proxy Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Proxy Statement is materially misleading in that it fails to provide adequate disclosure of material information related to the Proposed Transaction.

4. Specifically, the Proxy Statement fails to disclose material information about the financial projections prepared by the Company and relied upon by the Company's financial advisor, and omits material information with respect to the process and events leading up to the Proposed Transaction, including material information concerning conflicts of interest involving the Company's financial advisor. The omission of this material information renders the Proxy Statement materially incomplete and misleading in violation of §§ 14(a) and 20(a) of the Exchange Act.

---

[1] The Company and the Individual Defendants are referred to herein as "Defendants."

5. For these reasons and as set forth in detail herein, the Individual Defendants, and the Company, have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

7. The Court has personal jurisdiction over each of the Individual Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Panera maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, the owner of shares of Panera common stock.

10.     Defendant Panera, is a national bakery-cafe concept with 2,042 Company owned and franchise-operated bakery-cafe locations in 46 states, the District of Columbia and Ontario, Canada. The Company is headquartered in St. Louis, Missouri, and operates as three business segments: (i) Company-owned bakery-café operations; (ii) franchise operations; and (iii) fresh dough and other product operations. The Company, organized and existing under the laws of the State of Delaware, maintains its principal executive offices at 3630 South Geyer Road, Suite 100, St. Louis, Missouri 63127.  Panera's common stock is traded on the NASDAQ under the ticker symbol "PNRA."

11.     Defendant Ronald M. Shaich ("Shaich") is founder, chairman and CEO of Panera.

12.     Defendant William W. Moreton ("Moreton") has served as Panera's Executive Vice Chairman since August 2013 and as a member of the Company's Board since May 2010.

13.     Defendant Domenic Colasacco ("Colasacco") has served as a member of the Company's Board since March 2000 and as the Company's Lead Independent Director since January 2008.

14.     Defendant Diane Hessan ("Hessan") has served as a member of the Company's Board since November 2012.

15.     Defendant Fred Foulkes ("Foulkes") has served as a member of the Company's Board since June 2003.

16.     Defendant Larry Franklin ("Franklin") has served as a member of Panera's Board since June 2001.

17. Defendant Thomas E. Lynch ("Lynch") has served as a member of Panera's Board since March 2010. This is Lynch's second stint as a member of Panera's Board. Lynch previously served as a director from June 2003 until December 2006.

18. Defendant Mark Stoever ("Stoever") was elected to Panera Board on January 31, 2016, and has served in this capacity ever since.

19. Defendant James White ("White") was elected to Panera Board on January 31, 2016, and has served in this capacity ever since.

20. Defendants Shaich, Moreton, Colasacco, Hessan, Foulkes, Franklin, Lynch, Stoever, and White, are collectively referred to as "Individual Defendants" and/or the "Board."

## OTHER RELEVANT ENTITIES

21. Defendant JAB is a privately held limited liability company incorporated under the laws of the Netherlands.

22. Parent, Rye Parent Corp., is a Delaware corporation and an affiliate of JAB.

23. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action individually and as a class action on behalf of all holders of Panera stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

25. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

5

26. The Class is so numerous that joinder of all members is impracticable. According to the Proxy Statement, as of April 30, 2017, there were 21,338,692 shares of Class A common stock issued and outstanding, 1,381,730 shares of Class B common stock issued and outstanding, 18,174 shares of common stock underlying options with an exercise price below the per share merger consideration of $315.00, and 54,100 shares of common stock underlying stock appreciation rights with a reference price below the per share merger consideration of $315.00. These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

27. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

    a. whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

    b. whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

28. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

29. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

30. The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

31. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

32. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

33. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

**Company Background**

34. Founded thirty years ago, Panera is an American chain of bakery-cafe fast casual restaurants in the United States and Canada that has grown to become one of the largest bakery-cafe concepts in the world. As of Dec. 27, 2016, there were 2,036 bakery-cafes in 46 states and in Ontario, Canada operating under the Panera Bread®, Saint Louis Bread Co. ® or Paradise Bakery & Cafe® names.

**The Merger Process**

35. In August of 2016, Panera was approached by a representative of a potential strategic partner, Party A, concerning the possibility of a business combination between the two entities. This interest was reciprocated by Panera, and discussions between the two entities continued throughout the fall of 2016 until November, when a representative of Party A called Defendant Shaich and informed him that, given the then current stock price of the Company, Party A was not in a position to move forward with any business combination.

36. On February 9, 2017, a few months after Party A withdrew its interest, Defendant Shaich held an introductory meeting with Olivier Goudet ("Goudet"), the Chief Executive Officer of JAB, and David Bell ("Bell"), Head of M&A of JAB, to review each party's respective businesses. This initial meeting was followed by a second conversation on February 24, 2017, at which time Defendant Shaich, Goudet, and Bell discussed the possibility of a business combination between the Company and JAB.

37. JAB's interest in a potential business combination was first presented to Panera's Board during a March 1, 2017 Board meeting. After learning of Defendant Shaich's meeting with Messrs. Goudet and Bell, the Board discussed the possibility of a strategic transaction and directed Defendant Shaich to continue discussions with JAB.

38. Pursuant to the Board's directive, on March 10, 2017, Defendant Shaich again met with Messrs. Goudet and Bell at which time Messrs. Goudet and Bell made an initial offer for JAB to acquire the Company. Amongst other terms, the initial offer contemplated: (i) a purchase price of $286.00 per share in cash; (ii) the absence of any financing condition to the closing of the transaction; (iii) a limitation on Panera's ability to contact any third parties in an attempt to generate competing interest in a potential acquisition of the Company; (iii) an expectation that Mr. Shaich, as a significant stockholder of the Company, would publicly support the transaction; and (iv) that the definitive agreement would include a customary no-shop provision with a fiduciary out and a 4% termination fee.

39. JAB's initial offer was presented to the Board during a March 14, 2017 meeting. A representative of Sullivan & Cromwell LLP ("Sullivan"), the Company's outside legal counsel, was in attendance and apprised the Board of the Board's fiduciary duties under Delaware law in considering a potential transaction with JAB. Following this discussion, the

8

Board reviewed JAB's offer and concluded that the purchase price of $286.00 significantly undervalued the Company. Accordingly, the Board directed Defendant Shaich to inform Messrs. Goudet and Bell that any future offer must involve a purchase price significantly higher than the $286.00 per share currently proposed. The Board also broached the topic of retaining a financial advisor to advise the Board in connection with any potential transaction with JAB, and determined that the Company should reach out to Morgan Stanley ("Morgan Stanley") regarding such potential engagement.[2]

40. On March 20, 2017, JAB communicated, through Mr. Goudet, that JAB was prepared to make a revised offer of $296.50 per share in cash. That same day, Panera's Board met to evaluate this updated offer. Although the Board ultimately determined that the increased offering price of $296.50 still undervalued the Company, the Board directed management to move forward with further discussions and due diligence under the expectation that any final price would be significantly higher.

41. From March 28, 2017 until the execution of the merger agreement on April 4, 2017, the parties and their respective representatives engaged in due diligence and participated in numerous discussions and negotiations concerning the terms of both the merger agreement and Defendant Shaich's voting agreement. In connection with these negotiations, on April 3, 2017, JAB increased its offer to $315.00 per share in cash.

42. Shortly thereafter, on April 4, 2017, the Board held a meeting to review the proposed final draft of the Merger Agreement. During this meeting, a representative of Morgan Stanley presented to the Board Morgan Stanley's financial analysis of the $315.00 per share cash consideration to be offered to Panera's stockholders in the proposed merger, responded to

---

[2] Panera would ultimately retain Morgan Stanley as the Company's financial advisor on April 2, 2017.

9

questions from members of the Board regarding its financial analysis, and proceeded to deliver Morgan Stanley's oral opinion to the Board, subsequently confirmed by delivery of a written opinion, that the $315.00 in cash per share merger consideration to be received by the holders of Panera's common stock was fair, from a financial point of view, to such holders. Following this review, the Board concluded that the consideration reflected in the Merger Agreement was in the best interests of the Company and the Company's Stockholders, unanimously resolved that the merger agreement be submitted for consideration by the stockholders of the Company at a special meeting of stockholders, and recommended that the stockholders of the Company vote to adopt the merger agreement.

43. The Merger Agreement was executed on April 4, 2016, and the two companies announced the execution of the Merger Agreement the following morning.

**The Merger Announcement**

44. In a press release dated April 5, 2017, Panera announced that it had entered into a Merger Agreement with JAB pursuant to which JAB will acquire all of the outstanding shares of Panera common stock for $315 Per Share per share in cash.

45. The press release states in pertinent part:

St. Louis, MO — APRIL 5, 2017 — Panera Bread Company ("Panera" or the "Company") (NASDAQ: PNRA) and JAB today announced that the companies have entered into a definitive merger agreement under which JAB will acquire Panera for $315 per share in cash, in a transaction valued at approximately $7.5 billion, including the assumption of approximately $340 million of net debt. The agreement, which has been unanimously approved by Panera's Board of Directors, represents a premium of approximately 30% to the 30-day volume-weighted average stock price as of March 31, 2017, the last trading day prior to news reports speculating about a potential transaction, and a premium of approximately 20% to Panera's all-time high closing stock price as of that same date.

**Comment by Panera Founder, Chairman and CEO**
Ron Shaich, Founder, Chairman and CEO of Panera, commented, "By any measure, Panera has been one of the most successful restaurant companies in

10

history. What started as one 400 square foot cookie store in Boston has grown to a system with over 2,000 units, approximately $5 billion in sales, and over 100,000 associates. In more than 25 years as a publicly traded company, Panera has created significant shareholder value. Indeed, Panera has been the best performing restaurant stock of the past twenty years – up over 8,000%. Today's transaction is a direct reflection of those efforts, and delivers substantial additional value for our shareholders."

Shaich continued, "Over the last five years, we have developed and executed a powerful strategic plan to be a better competitive alternative with emerging runways for growth. The themes we have bet on - digital, wellness, loyalty, omni-channel, new formats for growth - are shaping the restaurant industry today. Indeed, the power of the plan is evident in our business results. Today, we are pre-releasing Q1 2017 Company-owned bakery-cafe comps of 5.3%, which is 690 bps better than the Black Box all-industry composite."

Shaich concluded, "Our success for shareholders is the byproduct of our commitment to long-term decision making and operating in the interest of all stakeholders, including guests, associates, and franchisees. We believe this transaction with JAB offers the best way to continue to operate with this approach. We are pleased to join with JAB, a private investor with an equally long-term perspective, as well as a deep commitment to our strategic plan."

**Comment by JAB Partner and CEO**
Olivier Goudet, JAB Partner and CEO, said, "We have long admired Ron and the incredible success story he has created at Panera. I have great respect for the strong business that he, together with his management team, its franchisees and its associates, has built. We strongly support Panera's vision for the future, strategic initiatives, culture of innovation, and balanced company versus franchise store mix. We are excited to invest in and work together with the Company's management team and franchisees to continue to lead the industry."

**Company Pre-Announces Comparable Net Bakery-Cafe Sales Growth for Company-owned Bakery Cafes**

In fiscal Q1 2017, Company-owned comparable net bakery-cafe sales increased 5.3% compared to the same period in fiscal 2016. Two-year Company-owned comparable net bakery-cafe sales increased 11.5%. Additionally, Company-owned comparable net bakery-cafe sales in fiscal Q1 2017 outperformed the Black Box all-industry composite by 690 basis points.

**Transaction Details**

The transaction is not subject to a financing condition and is expected to close during the third quarter of 2017, subject to the approval of Panera shareholders

and the satisfaction of customary closing conditions, including applicable regulatory approvals.

Mr. Shaich has entered into a voting agreement whereby he and entities affiliated with him have agreed to vote shares representing approximately 15.5% of the Company's voting power in favor of the transaction. Following the close of the transaction, Panera will be privately held and continue to be operated independently by the Company's management team.

JAB is acquiring Panera through JAB BV, an investment vehicle of JAB Consumer Fund and JAB Holding Company. JAB Consumer Fund is backed by a group of like-minded, long-term oriented investors and, together with JAB Holding Company, invests in companies with premium brands, attractive growth and strong margin dynamics in the Consumer Goods category. Both JAB Holding Company and JAB Consumer Fund are overseen by three senior partners, Peter Harf, Bart Becht and Olivier Goudet. Entities affiliated with BDT Capital Partners are also investing alongside JAB BV.

46. As noted in both the press release and Merger Agreement, Panera's stockholders will have the right to receive, in exchange for each share of Panera common stock, $315 per share in cash. However, the consideration to be paid to Plaintiff and the Class in the Proposed Transaction is inadequate because, among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

47. Here, the Individual Defendants have secured a deal that significantly harms shareholders, as Plaintiff and the Class will lose their right to share proportionately and equitably in the future success of the Company as a standalone entity.

**The Proxy Statement Omits Material Information**

48. On May 12, 2017, Panera filed the Proxy Statement with the SEC. As alleged below and elsewhere herein, the Proxy Statement contains material misstatements and omissions of fact that must be cured to allow Panera's stockholders to render an informed decision with respect to the Proposed Transaction.

49. As discussed below, the Proxy Statements omits material information regarding (i) Morgan Stanley's potential conflicts of interest; (ii) the valuation analyses prepared by

12

Panera's financial advisor, Morgan Stanley, in connection with the rendering of its fairness opinion; and (iii) Panera's management's financial projections, utilized by Morgan Stanley in its financial analyses. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Panera's stockholders.

50. With regard to the potential conflicts of interest faced by Morgan Stanley, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Morgan Stanley as the Company's financial advisor. The Proxy Statement details on page 45 the fee that Morgan Stanley will receive in connection with Morgan Stanley's role as financial advisor to Panera, and the lack of any prior compensation paid to Morgan Stanley by Panera over the past two years. However, the Proxy Statement fails to fully disclose material information concerning Morgan Stanley's prior relationship with JAB.

51. As a result of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, full disclosure of investment banker compensation and all potential conflicts is necessary for stockholders to have a materially complete sense of the conflicts of interests operating in the background. Despite this requirement, the Proxy Statement fails to detail the full extent of the services that Morgan Stanley has provided to JAB or its affiliates in the past two years. Instead, the Proxy Statement simply notes that in the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley or its affiliates have provided financing services and financial advisory services to certain affiliates of JAB's ultimate parent entity, for which Morgan Stanley or its affiliates has received, in the aggregate, compensation of between $25 million and $30 million. No further disclosures

are provided pertaining to the identity of these entities or the nature of the work that was provided. This is particularly troubling in light of the fact that Morgan Stanley waited until March 30, 2017, just five days before the Merger Agreement was executed, to disclose its prior engagements with the JAB affiliates to the Panera Board.

52. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the constituent line items used in calculating unlevered free cash flow, including tax-affected earnings before interest and taxes and after stock-based compensation expense, depreciation and amortization, capital expenditures, cash flow from other investing activities, changes in working capital, and certain after tax one-time items of the Company; (ii) the estimated terminal value of the Company; (ii) the estimated debt outstanding of the Company; (iii) the estimated cash balance of the Company; (iv) the inputs and assumptions used to calculate the discount rate range of 5.7% to 7.5%; (v) the estimated debt outstanding, and estimated non-controlling interest and cash, cash equivalents and marketable securities as of December 31, 2016, as provided by the Company's management; and (vi) the number of fully diluted shares of Panera common stock outstanding as of December 31, 2016, as provided by Panera's management.

53. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Furthermore, disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Here, the Defendants' failure to provide full and accurate disclosures renders

the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "*Background of the Merger*"; (ii) "*Reasons for the Merger;*(iii) *Recommendation of the Board*"; (iv) "*Summary of Material Financial Analyses*"; (v) "*Opinion of Morgan Stanley & Co. LLC*"; and (vi) "*Certain Company Forecasts.*"

54. Additionally, the Proxy Statement also fails to disclose material information concerning the Company's financial projections. Specifically, the Proxy Statement discloses four non-GAAP accounting metrics for projected financial information over the years 2017-2021: Unlevered Cash Flow from Operations, Unlevered Free Cash Flow, EBITDA, and EBIT. Providing these non-GAAP metrics without fully disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP figures to GAAP measures, makes the provided disclosure materially incomplete and misleading. Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance.

55. The Proxy Statement provides Panera stockholders with non-GAAP financial projections that make it extremely difficult for stockholders to assess the fairness of the Proposed Transaction. Because of the non-standardized and potentially manipulative nature of non-GAAP measures, the SEC requires that, when a company discloses non-GAAP financial measures, as is the case here, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

56. Item 10(e)(1)(i)(B) of SEC Regulation S-K further states that, with regard to forward-looking information such as financial projections, *any* reconciling metrics that are available without unreasonable efforts must be disclosed. 17 C.F.R. 229.10(e)(1)(i)(B). Moreover, on May 17, 2016, the SEC's Division of Corporation Finance released updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial

15

measures. One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide reconciling metrics for "free cash flow" figures. S.E.C. Comp. & Disc. Interps., Question 102.07 (May 17, 2016) https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

57. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Panera's stockholders. Accordingly, based on the foregoing disclosure deficiencies in the Proxy Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will suffer, absent judicial intervention, if Panera's stockholders are required to vote on the Proposed Transaction without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

### COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

58. Plaintiff repeats and realleges each allegation set forth herein.

59. As detailed herein, Defendants disseminated the materially incomplete and misleading Proxy Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, misstated and omitted material facts necessary in order to make the statements therein not misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

60. By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of Panera.

61.     By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by Defendants. The Proxy Statement misrepresented and omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. Defendants were at least negligent in filing and disseminating the Proxy Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Proxy Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

62.     The omissions and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them significant in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

63.     Defendants knew, or should have known, the true facts underlying the misstatements and omissions of material facts alleged herein.  All of the relevant facts are, and at all relevant times have been, available to the Defendants.

64.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## COUNT II
**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants acted as controlling persons of Panera within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of Panera and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

67. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

69. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and

18

information that they reviewed and considered – descriptions which had input from the Individual Defendants.

70. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)   declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)   declaring that the Proxy Statement is materially false or misleading;

(C)   enjoining, preliminarily and permanently, the Proposed Transaction;

(D)   in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)   directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)   awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)   granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 2, 2017

**CAREY DANIS & LOWE**

*/s/ James J. Rosemergy*
James J. Rosemergy MO#50166
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700
Facsimile: (314)721-0905
Email: jrosemergy@careydanis.com

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky (to be admitted *pro hac vice*)
Brian D. Long (to be admitted *pro hac vice*)
Gina M. Serra (to be admitted *pro hac vice*)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**LEVI & KORSINSKY LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com
Email: etripodi@zlk.com